"O"

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEITH RIELLY,** | CASE NO. SACV 06-0867 AG (ANx) |
| **Plaintiff,** | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **D.R. HORTON, INC.,** | |
| **Defendants.** | |

Before the Court is Defendant D.R. Horton, Inc.'s Motion for Summary Judgment or, Alternatively, Partial Summary Judgment ("Motion"). After considering the moving, opposing, and reply papers, and oral argument by the parties, Summary Judgment is GRANTED.

**BACKGROUND**

In early 2002, Defendant hired Plaintiff Keith Reilly ("Plaintiff") as part of its acquisition of another company. (Statement of Uncontroverted Facts and Conclusions of Law of Defendant D.R. Horton, Inc. in Support of Motion for Summary Judgment or Alternatively, Partial Summary Judgment ("SUC") ¶ 1; Plaintiff Keith Rielly's Statement of Genuine Issues of

1  Material Fact in Opposition to Defendants' Motion for Summary Judgment and/or Summary
2  Adjudication ("SGI") ¶ 1.)  During the hiring discussions, Plaintiff was told that he would
3  receive bonuses based on his performance and that of the company. (SUF ¶ 3; SGI ¶ 3.)  At the
4  end of the fiscal years 2002, 2003, and 2004, Plaintiff received bonuses.  (SGI 6:24-28.)  At the
5  end of the 2005 fiscal year, Plaintiff did not receive a bonus.  (SUF ¶ 6; SGI 6:26.)

6  When he did not receive a bonus for 2005, Plaintiff contacted a supervisor to inquire
7  about it.  (SUF ¶ 32; SGI ¶ 32.)  Ultimately, a meeting was held between Plaintiff and three of
8  his supervisors in early January 2006.  (SUF ¶ 35; SGI ¶ 35.)  During that meeting, Plaintiff's
9  supervisors did not give him a bonus, but instead criticized him.  (SUF ¶ 37; SGI ¶ 37.)
10 Defendant states that during the meeting, the supervisors discussed their generally negative view
11 of Plaintiff's performance.  (SUF ¶¶ 37.)  Plaintiff characterizes that meeting as a "mean-
12 spirited, personal attack . . . designed to get him to quit."  (SGI ¶ 37.)

13 On February 4, 2006, a supervisor informed Plaintiff that Defendant was eliminating his
14 position.  (SUF ¶ 42; SGI ¶ 42.)  Since firing Plaintiff, the company has not replaced him, and
15 has instead adopted a method of having other employees take over duties that were previously
16 Plaintiff's.  (SUF ¶ 42.)

17 In September 2007, Plaintiff filed a First Amended Complaint alleging violations of the
18 California Labor Code and California Business and Professions Code, wrongful termination in
19 violation of public policy, and breach of an implied contract of employment.  Plaintiff alleges
20 that Defendant fired him to avoid paying him his bonus, to which he was legally entitled.
21 Plaintiff also alleges that Defendant fired him because he engaged in whistleblowing activities.
22 Finally, Plaintiff alleges that he had an implied contract with Defendant that he would only be
23 fired for good cause, and that firing Defendant violated that contract.

24 In this Motion, Defendant contends that Plaintiff had no legal entitlement to his bonus,
25 that Defendant was not aware of Plaintiff's whistleblowing activities, and that Plaintiff did not
26 have an implied contract with Defendant.  Finally, Defendant argues that it had good cause to
27 fire Plaintiff because Plaintiff was not performing his job as Defendant expected and his position
28

was not adding value to the company. (Memorandum of Points and Authorities in Support of Defendant D.R. Horton's Motion for Summary Judgment; or in the Alternative, Partial Summary Judgment ("Memorandum in Support of Summary Judgment") 3:19-21; 8:24-25.)

**LEGAL STANDARD**

      Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

      The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Only if the moving party meets its burden, the non-moving party must produce competent evidence to rebut the moving party's claim and create a genuine issue of material fact. *See id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

# ANALYSIS

**1.     INITIAL EVIDENTIARY OBJECTIONS**

   **1.1     Plaintiff's Objection to Defendant's Evidence from Chris Chambers Regarding his Division Presidents**

On September 24, 2007, Defendant filed a Declaration of Chris Chambers in Support of D.R. Horton, Inc.'s Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment ("Chambers Reply Declaration"). In that Declaration, Chambers states that in 2005, he discussed with his Division Presidents the possibility of eliminating the position of Regional Vice-President of Purchasing. (Chambers Reply Declaration ¶ 2.) At the time, Plaintiff was the Regional Vice-President of Purchasing.

Additionally, at his August 9, 2007 deposition, Chris Chambers spoke about a meeting with his Division Presidents. (Chambers Declaration 43-44.) At the deposition, Chambers testified that he asked the Division Presidents what they thought of Plaintiff's job performance, and they gave Plaintiff low reviews. The Division Presidents at that meeting were Rick Coop, Rich Amborsini, Tony Wyman, Tom Harding, and Ed Galigher. (*Id.*)

Plaintiff argues that the Division Presidents were not identified in Defendant's disclosures as individuals likely to have discoverable information. (Plaintiff's Objection to Defendant's Evidence from Chris Chambers (Both His Reply Declaration and his Deposition) Regarding His Division Presidents ("Objection to Chambers Evidence") 1.) Specifically, Plaintiff argues that Defendant has never disclosed Rick Coop, Rich Amborsini, and Tony Wyman, and that Defendant only disclosed Tom Harding and Ed Galigher in a late disclosure. (*Id.*) Thus, Plaintiff argues that Defendant is "barred from relying on any evidence relating to statements made by or emanating from these unidentified Division Presidents." (*Id.*)

Because the Court does not rely on any statements by any Division Presidents for this Motion, it does not here rule on these questions.

### 1.2 Plaintiff's Motion to Strike the Declaration of Thomas Noon

To support its Motion for Summary Judgment, Defendant filed a Declaration by Thomas Noon ("Noon Declaration"). Plaintiff moves to strike that declaration under Federal Rule of Civil Procedure 56(g) as a bad faith declaration. Plaintiff also seeks reimbursement for the cost of opposing Defendant's Motion for Summary Judgment. Plaintiff argues that the Noon Declaration contains "at least 16 demonstrably false statements." (Plaintiff Keith Rielly's Motion to Strike the Bad-Faith Declaration of Thomas Noon Filed by Defendant in Support of its Motion for Summary Judgment ("Motion to Strike the Noon Declaration") 1:7.) Plaintiff lists those statements in the "Tom Noon Table of Lies." (*Id.* at 1:13.)

While there are inconsistencies between statements in the Thomas Noon Declaration and in the evidence presented by Plaintiff, the statements do not rise to the level of falsehoods made in bad faith. *See United Energy Corp. v. United States*, 622 F.Supp. 43 (N.D. Cal. 1985) (holding that a failure to recall events accurately did not constitute bad faith). Thus, the Motion to Strike the Noon Declaration is DENIED.

### 1.3 Plaintiff's Objection to Defendant's Reply Statement of Genuine Issues of Material Fact

Plaintiff objects that Defendant's Reply to Plaintiff's Statement of Genuine Issues of Material Fact is deceptive. Plaintiff argues that the document, in responding to Plaintiff's Statement of Genuine Issues of Material Fact, misstates Plaintiff's arguments. Plaintiff "requests that the Court examine Plaintiff's Statement of Genuine Issues of Material Fact for Plaintiff's contentions." (Plaintiff's Objection to Defendant's Bad-Faith and Incomplete Reply

Statement of Genuine Issues of Material Fact 1:15-17.)  As usual, the Court will read the papers of both parties.

### 2.     PLAINTIFF'S FIRST CLAIM FOR RELIEF

Plaintiff's first claim is for violation of the California Labor Code for nonpayment of wages.  Plaintiff alleges that he was entitled to an $85,000 bonus at the end of 2005, and that Defendant fired him instead of paying him the bonus.  (First Amended Complaint ¶ 10.) Plaintiff alleges that Defendant owes him his bonus as "wages" earned and unpaid under California Labor Code § 200 and § 201.

Defendant contends that whatever bonus arrangement existed between Plaintiff and Defendant was not enforceable.  For this contention, he cites *Rochlis v. Walt Disney Co.*, 19 Cal.App.4th 201, 213 (1993) disapproved on other grounds by *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1251 (1994), and *Ladas v. California State Auto. Assn.*, 19 Cal.App.4th 761 (1993).  In *Rochlis*, the California Court of Appeal held that an oral contract for "reasonable annual bonuses" appropriate to an employee's "responsibilities and performance" was too vague and indefinite to be enforceable.  The court added that enforcing that sort of promise would "improperly impose on the court the burden of making financial and management decisions better left to the parties." *Id.*

Further, in *Ladas v. California State Auto. Assn.*, 19 Cal.App.4th 761 (1993), the California Court of Appeal held that whether a contract term is sufficiently definite to be enforceable is a question of law for the court. *Id.* at 770.  The court determined that an alleged contract that obligated the employer to pay its employees according to "industry standards" was too vague to be enforceable. *Id.*  The court emphasized the difficulty of determining what the appropriate "industry standard" was, stating: "The nature of the obligation asserted provides no rational method for determining breach or computing damages." *Id.* at 771.  The court added: "Employers frequently boast of good benefits, competitive salaries, excellent working conditions

6

and the like. To anoint such puffing language with contractual import would open the door to a plethora of specious litigation and constitute a sever and unwarranted intrusion on the ability of business enterprises to manage internal affairs." *Id.* at 772.

These cases show that not all bonus agreements are enforceable. Instead, they must be definite enough to provide a court with a rational basis for calculating breach or computing damages. The alleged bonus agreement here does neither. Plaintiff asserts a right to a bonus, but offers no method of calculation for that bonus. Plaintiff argues only that he had an oral contract stating that he would receive bonuses based on his performance for the fiscal year and that of the company. (Declaration of Keith Rielly in Opposition to Defendant's Motion for Summary Judgment ("Rielly Declaration") ¶ 3.) Plaintiff admits that he was never promised a specific amount for his bonuses. (Reilly Deposition 363:9-18.) Finally, in his deposition, Plaintiff concedes that Defendant had the discretion, not only to decide how large a bonus to award him, but *whether* to award him any bonus at all. (*Id.*; Noon Declaration ¶ 14.)

To overcome these deficiencies, Plaintiff attempts to create a method for calculating his bonus. Plaintiff states that his bonus for the 2003 fiscal year was $75,000. (*Id.* at ¶ 6.) He argues that, since his performance and the performance of the company for the 2005 fiscal year were better than in 2003, he was entitled to a bonus of at least 75,000 for 2005. (*Id.* at ¶ 13.) But how is the Court to calculate a bonus "of at least $75,000"? Should the number be $85,000? $100,000? Further, Plaintiff alleges that his performance and that of the company were their best ever in 2005. (*Id.* at ¶ 12.) But Plaintiff presents no evidence on how Defendant agreed to measure "performance." Is "performance" solely a measure of how much money is made or saved? Or does "performance" involve how well an employee follows directions and relates with his supervisors? If "performance" means something other than pure numbers, how should the Court weigh the factors? As in *Rochlis* and *Ladas*, these are questions unsuitable to the Court. Thus, Plaintiff's alleged oral contract for a bonus loosely based on his performance and that of the company is too vague to be enforceable.

To support his argument that the alleged promise for a bonus was enforceable, Plaintiff turns to *Sabatini v. Hensley*, 161 Cal.App.2d 172 (1958), and *Hunter v. Ryan*, 109 Cal.App. 736 (1930). Those cases are of questionable authority due to their age, especially since they seem to be in conflict with the more recent California cases cited. They are also distinguishable. For example, in *Sabatini*, the California Court of Appeal held that "[w]hen an employer promises a prospective employee a fixed salary and an indeterminate bonus, each promise is made to induce undertaking of the employment. . . . The failure to specify the amount or a formula for determining the amount of the bonus does not render the agreement too indefinite for enforcement." *Sabatini*, 161 Cal.App.2d at 174. In that case, the employer had recognized that the salary was low and had promised to make up for it with bonuses. *Id.* Thus, implicit in the promise for a bonus was a method of calculation – what a reasonable salary would have been. Thus, the court held that the bonus could be calculated as the reasonable value of the employee's services over the salary. *Id.* at 175. In contrast, here there is no indication that the bonuses were to be given for the reasonable value of Plaintiff's work. Instead, they were to be awarded based on the vague notion of "performance," only if Defendant deemed them appropriate.

Further, in *Sabatini* the only condition for the award of the bonus was that the business do well. Since the business did do well, the employee had clearly satisfied the condition for the bonus. Thus, the only question before the court was how much of a bonus to award. In contrast here, Plaintiff has not shown that he was eligible for any bonus at all under the "performance" standard. He has made no showing of what factors "performance" should be based on.

Similarly, *Hunter* is distinguishable. In that case, the defendant told the plaintiff "I have a job for you. I will give you $50 a week and a bonus to try it out." *Hunter*, 109 Cal.App. at 737. The employee then "tried out" the job and was not awarded the bonus. *Id.* Thus, in *Hunter*, as in *Sabatini*, the conditions for the bonus had been satisfied. This rendered the bonus much more definite than here, where even the basis for determining *whether* Plaintiff should have received a bonus is unclear.

8

This distinction is supported by *Neisendorf v. Levi Strauss & Co., et al.*, 143 Cal.App.4th 509 (2006). In that case, the employee argued that she was entitled to a bonus. The court held that she was not, because the bonus agreement required that she be working for the employer on the payout date. The court stated that a bonus "is considered wages that must be paid" when "a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions." *Id.* at 522. Because the employee had not fulfilled all the agreed-to conditions, she was not entitled to a bonus. Similarly here, there is no indication that Plaintiff "performed" well, because there is no indication of how "performance" was to be measured. Thus, Plaintiff cannot prove that he was entitled to a bonus.

Thus, the alleged bonus promise is too vague to be enforceable in a court of law. Defendant's Motion is GRANTED as to Plaintiff's first claim for relief.

### 3. PLAINTIFF'S SECOND CLAIM FOR RELIEF

Plaintiff's second claim is for Violation of the California Labor Code and the California Business and Professions Code §§ 17200, *et seq*. Plaintiff and Defendant agree that the second cause of action "rises and falls with the first." (Plaintiff's Opposition Brief to Motion for Summary Judgment ("Opposition") 17:11.) Thus, Defendant's Motion is GRANTED as to Plaintiff's second cause of action.

### 4. PLAINTIFF'S THIRD CLAIM FOR RELIEF

Plaintiff's third claim is for wrongful termination in violation of public policy, because Defendant allegedly fired him to avoid paying him a bonus for the 2005 fiscal year. (First Amended Complaint ¶ 22.) Plaintiff claims that this termination violated the California Labor Code. Defendant replies that Plaintiff's third claim must fail if his first and second claims fail. Defendant argues: "To establish a claim for wrongful termination in breach of public policy, [a]

plaintiff must ultimately establish that his termination violated a Constitutional or statutory provision, or a public policy enunciated in an administrative regulation." (Memorandum in Support of Summary Judgment 14:19-15:2.) Plaintiff does not dispute that his third claim must fail if his first and second fail. Thus, Defendant's Motion is GRANTED as to Plaintiff's third claim for relief.

### 5.     PLAINTIFF'S FOURTH CLAIM FOR RELIEF

Plaintiff's fourth claim alleges wrongful termination in violation of public policy under the Sarbanes-Oxley Act ("SOX"). Plaintiff alleges that Plaintiff was fired because, while employed with Defendant, he constantly complained about the method Defendant used to report savings to the public. (Opposition 28:4-10.) Defendant responds that Plaintiff was fired for legitimate business reasons, and that Plaintiff has not produced any evidence indicating otherwise.

Because Plaintiff's claim for wrongful termination violating SOX is essentially a whistleblower claim under SOX, it should be analyzed as such. *See Stevenson v. Superior Court*, 16 Cal.4th 880, 904 (1997) (holding that when a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination violating public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition). To prevail on a whistleblower claim under SOX, Plaintiff must show that: (1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the termination of employment. *Fraser v. Fiduciary Trust Co. Int'l*, 417 F.Supp.2d 310, 322 (S.D.N.Y. 2006). If the Plaintiff makes that showing, Defendant can still avoid liability by demonstrating by clear and convincing evidence that the employer would have fired Plaintiff regardless of his whistleblowing activity. 49 U.S.C. § 42121(b).

Defendant argues that Plaintiff cannot show either that Defendant knew about Plaintiff's complaints or that circumstances exist to suggest that Plaintiff was fired because of his complaints. When showing that an employer knew of an employee's engagement in protected activity, the employee must show that the "actual decision maker" responsible for firing the employee knew of the protected activity. *Morgan v. Regents of University of Cal.*, 88 Cal.App.4th 52, 73 (2000). Thus, in this case, it is not enough that someone in the company was aware of Plaintiff's complaints. Instead, Plaintiff must make a showing that the person who actually made the decision to fire him knew of Plaintiff's complaints. *Id.*

Plaintiff cannot make this showing. The parties do not dispute that Thomas Noon made the decision to fire Plaintiff. (Plaintiff Keith Rielly's Statement of Genuine Issues of Material Fact in Opposition to Defendants' Motion for Summary Judgment and/or Summary Adjudication ("Plaintiff's Statement of Genuine Issues") ¶¶ 40-41.) Thomas Noon declares that when he decided to fire the Plaintiff, he had no knowledge that Plaintiff had been complaining about the savings reports. (Noon Declaration ¶ 23.) Plaintiff cannot dispute this. Plaintiff does not allege that he ever made his complaints directly to Noon. Indeed, Plaintiff offers no evidence that Noon was aware of his complaints. (Plaintiff's Statement of Genuine Issues at ¶ 46.) Instead, Plaintiff argues, based on who he *did* complain to, that "[t]here is no way that Noon did not hear" about the complaints. (*Id.*) That argument alone is not enough to create a genuine issue of material fact.

Defendants Motion is GRANTED as to Plaintiff's fourth claim for relief.


### 6. PLAINTIFF'S FIFTH CLAIM FOR RELIEF

Plaintiff's fifth claim for relief alleges breach of implied contract. (First Amended Complaint ¶ 58.) Plaintiff alleges that he had an "implied-in-fact contract of employment with Defendant that provided, among other things, that [he] would not be demoted or terminated

11

(constructively or otherwise) without just, legal, and adequate cause." (*Id.* at ¶ 59.) Plaintiff alleges that he was terminated without just cause, violating the contract. (*Id.* at ¶ 61.)

Defendant argues that this claim fails for two reasons. First, Defendant claims that Plaintiff was an at-will employee, who could be fired without just cause. (Memorandum in Support of Summary Judgment 20:24-26.) Second, Defendant argues that it had good cause to terminate Plaintiff's employment. (*Id.* at 20:23-24.)

In California, employees having no specified term of employment are presumed to be at-will employees. Cal. Lab. Code § 2922. This presumption of at-will employment "may be rebutted only by evidence of an express or implied agreement between the parties that the employment would be terminated only for cause." *Eisenberg v. Alameda Newspapers*, 74 Cal.App.4th 1359, 1386 (1999). The question of whether there exists an implied promise of discharge only for good cause is generally a question of fact for the jury. *Id.* (citing *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 668 (1988)). Still, if the facts admit of only one conclusion, "the issue of the existence of an implied-in-fact contract not to terminate except for good cause may appropriately be resolved as a matter of law." *Eisenberg*, 74 Cal.App.4th at 1386 (citing *Davis v. Consolidated Freightways*, 29 Cal.App.4th 354, 366 (1994)).

Under this reasoning, California courts have found that a contract requiring termination only for cause will not be implied "if there is an express writing providing to the contrary." *Eisenberg*, 74 Cal.App.4th at 1387. They reason that "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but compelling different results." *Id.* (citing *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 482 (1984)).

If an employee has signed an express writing stating that employment is "at-will," this will bind the employee even if the writing is not an integrated contract. *Camp v. Jeffer, Mangels, Butler, & Marmaro*, 35 Cal.App.4th 620, 630 (1995) (holding that signed forms acknowledging that employment was at-will "precluded the existence of an implied contract requiring good cause for termination"). In *Tomlinson v. Qualcomm, Inc.*, 97 Cal.App.4th 934 (2002), an employee had signed an employment application and an employment agreement

12

expressly stating that her employment was on an at-will basis. She then argued that statements in her employer's personnel handbook created an implied agreement that her employment was not "at-will." The court rejected this argument, finding that the express term regarding at-will employment was controlling. *Id.* at 945l; *see also Eisenberg*, 74 Cal.App.4th at 1388 (holding that the fact that an "at-will" express term was not an integrated contract "does not render [it] . . . any less significant to this case").

As in *Tomlinson*, Plaintiff here signed a form agreeing that his employment was "at-will." (Declaration of Jack S. Sholkoff in Support of Defendant D.R. Horton, Inc.'s Motion for Summary Judgment or Alternatively, Partial Summary Judgment ("Sholkoff Declaration"), Exhibit 5.) That form, acknowledging receipt of the newest employee handbook, states, in bold underlined text: "All employees of the company are employees 'at-will,' which means the company or the employee may terminate the employment relationship, at any time, with or without cause or notice." (*Id.*) The form continues: "Oral statements cannot void or modify the at-will nature of employment." (*Id.*) Then it states: "Neither this handbook nor any other manual, policy, or other document alters, in any way, the "at-will" employment status of employees of the company." (*Id.*) The form concludes: "I have read the handbook carefully and understand its provisions - particularly the above definition and explanations of my at-will employment status. I understand the handbook is not an employment contract, and I know that my employment is 'at-will' as defined above." *(Id.)*

It is hard to imagine a statement of at-will employment more express than that in the handbook acknowledgment form signed by Plaintiff. This express statement of at-will employment precludes a finding of any implied contract to the contrary. Thus, Plaintiff did not, as a matter of law, have an implied contract guaranteeing termination only for good cause. Because of this finding, the Court will not reach whether Defendant had good cause to fire Plaintiff.

Defendant's Motion is GRANTED as to Plaintiff's fifth claim for relief.

**CONCLUSION**

Summary Judgment is GRANTED.

IT IS SO ORDERED.

DATED: September 17, 2008

_____
Andrew J. Guilford
United States District Judge